UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | 1:10-cr-00147-JAW |
| | ) | |
| BRANDON CAPAROTTA | ) | |

**PRESENTENCE ORDER**

**I.  STATEMENT OF FACTS**

On November 10, 2010, Brandon Caparotta pleaded guilty to theft of firearms from a licensed dealer, a violation of 18 U.S.C. § 922(u), and possession of stolen firearms, a violation of 18 U.S.C. § 924(a)(2).  At the guilty plea, the Court ordered the preparation of a presentence report (PSR).  The Probation Office last revised the PSR on January 26, 2011 and the parties interposed a number of objections.  *PSR* at 1, 20-23.  The Government objected to the number of guns for which the Defendant should be held accountable.  *Id.* at 20.  Mr. Caparotta made six objections to the contents of the PSR:

1) Paragraphs 5 and 7: Corey Damon's Interview

    Paragraphs 5 and 7 of the PSR sets forth the contents of law enforcement interviews of Corey Damon, a co-defendant.  The Defendant objected to the inclusion of Mr. Damon's statements, because they were not, in his view, true;

2) Paragraph 6: Tyler Damon's Interview

    Paragraph 6 of the PSR contains the contents of a law enforcement interview of Tyler Damon, a co-defendant.  The Defendant objected

because he believes that Tyler Damon did not say where he dropped off the guns, but if he did, the PSR should reflect that he dropped them off in Winterport, not Bucksport, Maine.

3) Paragraph 12: Restitution

Paragraph 12 of the PSR contains information on restitution to the victims. The Defendant objected, saying that because the firearms were recovered, there should be no restitution;

4) Paragraph 17: Defendant's Drug Use

Paragraph 17 of the PSR contains information about the Defendant's use of drugs. The Defendant objected, saying that he had not discussed his drug use near the time of the burglary.

5) Paragraph 19: Stolen Firearm Enhancement

Paragraph 19 of the PSR imposes a two-level enhancement under U.S.S.G. § 2K2.1(b)(4). The Defendant objected to the enhancement because he contended that specific offense characteristic is accounted for in the offense of conviction.

6) Paragraph 20: Use of a Firearm While Aiding in a Burglary

Paragraph 20 of the PSR imposes a four level enhancement under U.S.S.G. § 2K2.1(b)(6). The Defendant objected to the enhancement on the ground that he did not use a firearm.

*PSR* at 21-23.

Counsel filed memoranda in anticipation of sentencing. *Mem. in Aid of Sentencing* (Docket # 34); *Def.'s Mem. in Aid of Sentencing* (Docket # 35);*Gov't's Resp. to Def.'s Mem. in Aid of Sentencing* (Docket # 98). The Court held a presence conference on February 23, 2011. The Court scheduled the sentencing hearing for March 25, 2011.

At the March 25, 2011 sentencing hearing, after confirming the Defendant's competency, the Court directed the Defendant to Part A of the PSR, the offense, to determine whether he agreed with the PSR's description of what occurred. Defense counsel objected to paragraphs 5 and 7 of the PSR. She explained that she was not objecting because the PSR inaccurately reported what Corey Damon had said; rather, she was objecting because what Corey Damon had said was false and should not be considered by the Court.

Paragraph 5 of the PSR stated:

> Corey Damon was then advised of his *Miranda* rights and was interviewed. Corey Damon admitted to breaking into MCRG and stealing guns, but refused to state where the stolen guns were. He also admitted to stealing the truck. Later that day, Corey Damon was interviewed by MSP and ATF investigators. He reported that, after stealing the pickup truck, he met friends and they followed him out to MCRG. Damon was familiar with MCRG because he had been there years ago with his grandfather and figured it would be an easy location to rob. Corey Damon reported that he broke into the store while the others waited outside and stole 16 guns, which he put into the back of the stolen pickup. He then took the guns to a location and dropped them off, before going to pick up his cousin. The two then got the stolen truck stuck in a ditch. Corey Damon reported that the mini-bike they had in the back of the truck, he had found in the woods. He further reported that he was extremely intoxicated the night before and had taken 150 10mg Valium pills, prior to stealing the truck. Corey Damon refused to state where he had taken the guns and demanded a "deal" on the charges before he would turn them over,

3

saying that they were in a safe place but if he did not get a deal, he would sell them when he got out on bail. He further reported that he had stolen numerous firearms prior to this incident, estimating the value of his thefts at $20,000.

*PSR* ¶ 5. Paragraph 7 reads:

> On August 24, 2010, agents again interviewed Corey Damon. This time, Damon stated that he had been with Tyler Damon, Caparotta, and Caparotta's girlfriend, Shelby Pinkham, when he stole the truck. The group then discussed breaking into MCRG and drove out to Orrington, ME. According to Corey Damon, Caparotta was supposed to break into the store with him but backed out and acted as the lookout. Caparotta brought a loaded Mini-14 rifle, that Corey Damon had stolen during a burglary of a residence in Millinocket, ME, the week prior. Originally, Damon reported that he broke into MCRG alone and had the Mini-14 rifle with him. However, he later stated that Caparotta had the Mini-14 with him at the side of the house. Both Tyler Damon and Pinkham remained in the car. Once in the business, Corey Damon heard a dog bark and he grabbed as many guns as he could, before running out of the store and putting the guns in the back of the pickup truck. As Corey passed Caparotta on the way back to the truck, he observed Caparotta eject a round from the Mini-14. They all left the premises and brought the guns to Caparotta's residence. While at the residence, Caparotta gave Cory Damon the mini-bike, which Caparotta reported stealing, and asked Damon to sell it for him, so they could split the money. They were in the process of stealing a Ninja 1000 motorcycle when the pickup truck got stuck in a ditch and the police came. Corey Damon further admitted that he had broken into residences owned by a man identified as "Gig" in Millinocket, ME. During those burglaries which he committed with two other individuals, Damon stole approximately twenty guns, most of which he brought to Caparotta's residence. Three of the guns were stored at a residence in Millinocket, ME and a few others he reported he sold to individuals he would not identify. Later that day, agents met with Chuck Dickenson, the father of Corey Damon's girlfriend, who provided them with the three firearms. Dickenson reported that he found the firearms in Dickenson's grandparent's home in Millinocket, where Damon had stayed on occasion. Dickinson also identified "Gig" as being his grandfather, Clem D'Angelo.

*PSR* at ¶ 7. Defense counsel contended that under Rule 32(i)(3)(B), the Court had an obligation to strike the portion of the PSR to which she had objected. FED. R.

4

CRIM. P. 32(i)(3)(B). The Court continued the hearing to allow the parties, especially the Government, to adequately prepare for the hearing.

## II. DISCUSSION

Federal Rule of Criminal Procedure 32 provides:

> At sentencing, the court . . . must - - for any disputed portion of the [PSR] or other controverted matter - - rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing.

FED. R. CRIM. P. 32(i)(3)(B). In *United States v. Jimenez-Rivera*, 842 F.2d 545, 550 (1st Cir. 1988), the First Circuit explained that Rule 32 "was promulgated, in part, to assure that the defendant is not prejudiced in the future by any factual errors in the [PSR]." The First Circuit mentioned that the Bureau of Prisons relies upon the accuracy of the PSR "in making critical determinations relating to custody . . . ." *Id.* at 550- 51.

In reviewing paragraphs five and seven of the PSR, it is apparent that not all of Mr. Damon's statements have been consistent and yet at the same time, not all have been inconsistent. In fairness to the Government, it is unclear exactly what portions of paragraphs five and seven Mr. Caparotta believes are erroneous and what portions he accepts as correct.

The Court therefore ORDERS Brandon Caparotta within seven days of the date of this Order to set forth in detail precisely what statements he contends are erroneous on a line by line basis. Within seven days of receipt of the Defendant's proffer, the Court ORDERS the Government to inform the Court what, if any,

evidence it intends to put forward in response to the Defendant's objections. The Court will then reschedule the sentencing hearing for a two-hour period unless informed that a longer or shorter period is necessary.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
CHIEF UNITED STATES DISTRICT JUDGE

Dated this 28th day of March, 2011